THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BYRON
M. DURHAM, Defendant-Appellant.

Second District  No. 2—97—0368

Opinion filed March 31, 1999.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin and Karen L. Daniel, of Oak Park, for appellant.

David R. Akemann, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Daniel N. Malato, of Cary, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Byron M. Durham, appeals from his convictions of first-degree murder (720 ILCS 5/9—1(a)(1), (a)(2) (West 1996)) and aggravated battery with a firearm (720 ILCS 5/12—4.2(a)(1) (West 1996)) and his consecutive sentences of 27 years' imprisonment for murder and 9 years for aggravated battery with a firearm. We affirm as modified.

At approximately 3:30 a.m. on May 7, 1996, Joe Nunnally was shot several times and taken to Mercy Center Hospital, where he died from his gunshot wounds on May 9. Casey Stewart was also shot at that time, although his wound did not require medical attention. Defendant was arrested on May 9 and subsequently charged with two counts of murder in the death of Joe Nunnally and one count of aggravated battery with a firearm in the wounding of Casey Stewart. Following a jury trial, defendant was found guilty of all three counts and was sentenced to consecutive terms of 27 years (one count of murder) and 9 years (aggravated battery with a firearm) in the Department of Corrections. Defendant's posttrial motion was denied. This appeal followed.

Defendant first contends that the trial court erred in allowing testimony regarding Joe Nunnally's identification of defendant from a photo lineup. The trial court allowed the jury to hear testimony of Investigator Marshall Gauer of the Aurora police department, who testified that on May 8 he and another investigator visited Joe Nunnally at Mercy Center Hospital. Nunnally was unable to speak at that time because he was hooked up to a ventilator and had a large tube in his mouth. However, Gauer explained that he wished to show Nunnally a photo lineup in an attempt to identify the shooter. Nunnally was to nod his head up and down if he saw the picture of his assailant. Gauer pointed to each picture on the display and asked Nunnally if that was the person who shot him. Nunnally shook his head no at the first three photos. However, at the fourth picture, which was a photo of defendant, Nunnally nodded his head when asked if that was the person who shot him. When asked if he was positive, he nodded again. In addition, tears began to fall from his eyes when he saw defendant's photo. The trial court denied defendant's motion *in limine* regarding this testimony, finding that Nunnally's reaction to viewing defendant's photo was an excited utterance and a spontaneous declaration, thus fitting into an exception to the hearsay rule.

The requirements for admissibility under the excited utterance exception to the hearsay rule are (1) the occurrence of an event sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time for fabrication; and (3) a statement relating

to the circumstances of the occurrence. *People v. House*, 141 Ill. 2d 323, 381 (1990). The factors to be considered in determining whether a statement is spontaneous, excited, and unreflecting are time, the nature of the event, the mental and physical condition of the declarant, and the presence or absence of self-interest. *House*, 141 Ill. 2d at 381-82.

■ Looking to these factors and requirements, we conclude that the court erred in finding Nunnally's statement to be an excited utterance or a spontaneous declaration. Foremost in our conclusion is the fact that there was no occurrence sufficiently startling to produce a spontaneous and unreflecting statement. The occurrence that made Nunnally nod and begin to cry was a police officer pointing to a picture of the defendant. While viewing a photograph of a person who shot him may have caused Nunnally anguish or anger, this is not the type of startling event that causes an excited utterance under the hearsay rule. Were it otherwise, any statement made in response to viewing an alleged offender or his photograph would be admissible. Taking this to its logical conclusion, even the mention of an alleged offender's name could then cause an excited utterance. Any questioning of a victim that involved an alleged offender's name could then be used as substantive evidence because of this rule. This is not the intention of this exception to the hearsay rule. The other factors to be considered are in this case inconclusive. Although 34 hours passed between the shooting of Nunnally and his viewing of the photo, he was in intensive care, under sedation, receiving blood, and hooked up to a respirator. He had time to fabricate, but his physical and mental conditions were not conducive to fabrication. That being said, Nunnally was lucid enough at the time he met with Gauer to respond to questions and instructions from Gauer and pick out defendant's photograph. We can see no self-interest on Nunnally's part to pick defendant out as his assailant other than to identify the person who shot him. However, Nunnally's statement fails the first requirement for admissibility under *House*. Therefore, we conclude that the court erred in finding that Nunnally's identification was admissible as an excited utterance or spontaneous declaration.

However, not all errors in the introduction of evidence require the reversal of a conviction; where other substantial competent evidence of a defendant's guilt is properly before the trier of fact, an error may be found to be harmless beyond a reasonable doubt. See *People v. Crayton*, 175 Ill. App. 3d 932, 955 (1988). Our review of the evidence in this case leads us to conclude that the court's erroneous admission of Nunnally's identification was, indeed, harmless beyond a reasonable doubt. Mickey Stewart testified that he knew both defendant and

Nunnally and saw defendant, from only a few feet away, shoot Nunnally. His description of defendant's clothing matched that given by Casey Stewart. Stewart also testified to an argument between Nunnally and defendant two to three hours before the shooting in which defendant stated "all right, mother f---er, it's on now, I'm going to get you, you pussy." Dr. William Mollohan, who treated Nunnally in the emergency room immediately after the shooting, testified that, in response to questioning, Nunnally twice stated that "Byron" shot him. Byron is the first name of defendant and Byron Savage, the man who brought Nunnally to the hospital and was in the emergency room when Nunnally said "Byron." However, there was no evidence that Byron Savage shot defendant. Defendant presented testimony of four family members in order to establish an alibi. However, none of the witnesses saw defendant at 3:30 a.m. on May 7, the time of the shooting; they all stated that defendant went to bed shortly after 11:30 p.m. on May 6 and that they saw him the following morning. Given this evidence, we conclude that the jury had more than enough evidence, excluding the erroneously admitted identification, to find defendant guilty beyond a reasonable doubt. Therefore, the court's error is harmless and does not require the reversal of defendant's convictions.

Defendant next contends that he was not proved guilty beyond a reasonable doubt of aggravated battery with a firearm. We disagree.

■ A reviewing court will not reverse a conviction unless the evidence is so improbable that a reasonable doubt of the defendant's guilt is justified. *People v. Moore*, 171 Ill. 2d 74, 94 (1996). The relevant question on review is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Moore*, 171 Ill. 2d at 95.

■ Defendant was charged with shooting Casey Stewart under section 12—4.2(a)(1) of the Criminal Code of 1961, which states in relevant part:

> "A person commits aggravated battery with a firearm when he, in committing a battery, knowingly or intentionally by means of the discharging a firearm (1) causes any injury to another person[.]" 720 ILCS 5/12—4.2(a)(1) (West 1996).

A person commits a battery when he knowingly or intentionally without legal justification and by any means causes bodily harm to an individual or makes physical contact of an insulting or provoking nature with an individual. 720 ILCS 5/12—3(a) (West 1996). Defendant argues that, as there is no claim of insulting or provoking contact, the State was required to prove that Casey Stewart sustained bodily harm and an injury, and this the State failed to do.

■ Our supreme court has held that, while it is difficult to pinpoint exactly what constitutes bodily harm, physical pain, lacerations, bruises, abrasions, and the like are required. See *People v. Mays*, 91 Ill. 2d 251, 256 (1982). However, direct evidence of injury, such as bruising or bleeding, is not required; the trier of fact may infer injury based upon circumstantial evidence in light of common experience. *People v. Norfleet*, 259 Ill. App. 3d 381, 392 (1994).

Here, Casey Stewart testified that he was grazed by a bullet on his left arm; a mark or something "of that nature" was left on his arm. Stewart refused medical treatment at the time, and the mark was gone by the time of the trial. Officer Ron Hinterlong testified that, although he spoke to Stewart about his injury on the night of the incident, he did not observe any injury. Detective Jim Coursey testified that he observed Stewart approximately two hours after the shooting and described what looked "like a small nick or cut on [Stewart's] right arm."

■ We conclude that the State did prove defendant guilty beyond a reasonable doubt of aggravated battery with a firearm. Both Stewart and Detective Coursey testified as to a mark on Stewart's arm; Coursey described it as "a small nick or cut." Certainly, nicks and cuts are similar in nature to lacerations, abrasions, and bruises. The fact that the mark was not still present at trial is not remarkable, as many physical manifestations of harm, such as bruises and abrasions, are not of a long-term nature. The fact that Stewart and Detective Coursey testified that the wound was on opposite arms is not a basis for reversal, as this goes to the weight to be given the evidence by the jury, not a failure of proof. Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found that Casey Stewart suffered an injury when his arm was grazed by a bullet fired by defendant. We will not reverse defendant's conviction of aggravated battery with a firearm.

■ Defendant next contends that he should not be subject to the truth-in-sentencing provisions of section 3—6—3 of the Unified Code of Corrections (730 ILCS 5/3—6—3 (West 1996)). We agree.

Our supreme court has recently held that Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995), which amended section 3—6—3 to include the truth-in-sentencing provisions, is unconstitutional, as it was enacted in violation of the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). See *People v. Reedy*, 186 Ill. 2d 1 (1999). Therefore, defendant is eligible to receive the good-conduct credit that he would have been eligible to receive prior to the enactment of Public Act 89—404, and the trial court's judgment must be so modified.

■ Defendant finally contends that the court erred in imposing consecutive, rather than concurrent, sentences. We first note that defendant failed to raise this issue at trial or in a posttrial motion. To be properly preserved on appeal, an issue must be raised both at trial and in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, the improper imposition of consecutive sentences might violate defendant's fundamental rights. *People v. Moncrief*, 276 Ill. App. 3d 533, 535 (1995). Therefore, we will review this issue to determine whether the imposition of consecutive sentences constitutes plain error. See *Moncrief*, 276 Ill. App. 3d at 535.

■ There are three circumstances under which a court may impose consecutive sentences for offenses that were committed as part of a single course of conduct during which there is no substantial change in the nature of the criminal objective; these circumstances occur when (1) one of the offenses of which the defendant was convicted was a Class X or a Class 1 felony and the defendant inflicted severe bodily injury; (2) the defendant was convicted of a violation of section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961; or (3) the court, having considered the nature and circumstances of the offense and the history and character of the defendant, is of the opinion that consecutive terms are required to protect the public from further criminal conduct by the defendant, and the basis for this opinion is set forth in the record. 730 ILCS 5/5—8—4(a), (b) (West 1996). In the first two circumstances, consecutive sentences are mandatory; in the third, they are in the trial court's discretion. 730 ILCS 5/5—8—4 (West 1996). The only circumstance at issue in this case is the first.

The trial court stated the following at sentencing:

"Now, I find that the aggravated battery with a firearm and the murder were committed as part of a single course of conduct during which there was no substantial change in criminal objective, and serious bodily injury was caused as, in both, the murder and the separate aggravated battery with a firearm with a separate victim.

I find therefore that the defendant's sentence for the aggravated battery with a firearm must run consecutively to the sentence I have just imposed for the murder, and I hereby sentence the defendant to nine years for that offense."

■ From this, defendant raises two arguments. First, defendant argues that the court erred in finding that Casey Stewart suffered serious bodily injury as a result of the gunshot wound. A trial court's decision with regard to sentencing is to be given great deference, and a reviewing court should not substitute its judgment for that of the sentencing court absent an abuse of discretion. *People v. Israel*, 181 Ill.

App. 3d 851, 860 (1989). However, we conclude here that the court did abuse its discretion in finding that the wound suffered by Casey Stewart was a severe bodily injury. The wound was described as a mark or something "of that nature" and "like a small nick or cut." Stewart refused medical treatment for the wound. The evidence of Stewart's wound does not fit the definition of severe bodily injury. The State cites the case of *People v. Johnson*, 149 Ill. 2d 118 (1992), and states that *Johnson* stands for the proposition that a gunshot wound satisfies the severe bodily harm requirement. However, a closer reading of *Johnson* reveals that the victim therein was hospitalized at least one day after he was shot. See *Johnson*, 149 Ill. 2d at 130-31. A "nick or cut" requiring no medical attention is not a severe bodily injury. We conclude that the record is inadequate to support a finding that the defendant inflicted severe bodily harm on Casey Stewart. Therefore, consecutive sentences cannot stand on this basis.

The question remains, then, whether the injuries sustained by Joe Nunnally can be the basis of consecutive sentences. There can be no doubt that the three gunshots that defendant pumped into the body of Joe Nunnally, which ultimately ended Nunnally's life, constituted severe bodily injury. However, citing *People v. Miller*, 193 Ill. App. 3d 918 (1989), defendant argues that Nunnally's injuries cannot be used as the basis for consecutive sentences. In *Miller*, the defendant was convicted of two counts of voluntary manslaughter, a Class 1 felony, and received consecutive sentences. The appellate court ruled that the "manslaughter deaths could not be considered the required severe bodily injury for the imposition of a consecutive sentence, because the severe bodily injury of death was also the essential ingredient of the voluntary manslaughter offenses." *Miller*, 193 Ill. App. 3d at 930. The court went on to state that "the same factor once relied on as an essential ingredient of an offense cannot thereafter also be relied on to enhance the penalty for the commission of that same offense." *Miller*, 193 Ill. App. 3d at 930.

We disagree with this interpretation of the statute. The legislature's intent in enacting a statute is best determined by the plain and ordinary meaning of statutory language, and where this language is clear and unambiguous, a court must enforce the law as enacted, without considering other aids in construction. *People v. Wittenmyer*, 151 Ill. 2d 175, 195 (1992). A reading of the clear and unambiguous language of section 5—8—4 does not allow for the interpretation given in *Miller*. Any severe bodily harm caused by a defendant is by necessity going to be included in one of the charges for which defendant is to be sentenced. Under defendant's theory, if Stewart had been more severely wounded by the bullet that hit him, that injury could not

have been used to mandate consecutive sentences either, as the injury would have been an essential element of the aggravated battery with a firearm. Only uncharged crimes causing severe bodily injury could be used to mandate consecutive sentences. This would be a ridiculous result. Interpreting the statute as defendant argues and the *Miller* court ruled would destroy the legislative intent that offenders who commit Class X and Class 1 felonies and cause severe bodily injury should serve consecutive sentences. This we refuse to do.

Defendant alternatively argues that the Class 1 or Class X felony must be the "triggering offense" for mandatory consecutive sentencing, relying on *People v. Whitney*, 297 Ill. App. 3d 965 (1998). The defendant in *Whitney* fired multiple shots into an automobile, killing one occupant but leaving unscathed the other occupant. Defendant was convicted of murder (720 ILCS 5/9—1(a)(1) (West 1994)) and the Class 1 felony of aggravated discharge of a firearm (720 ILCS 5/24—1.2(a)(2) (West 1994)) for shooting at, but missing, the second occupant of the car and was sentenced to consecutive terms in prison. *Whitney*, 297 Ill. App. 3d at 966. The appellate court ruled that the severe bodily injury suffered by the murder victim could not be combined with the aggravated discharge of the firearm to create a triggering offense for consecutive sentences. See *Whitney*, 297 Ill. App. 3d at 969. The *Whitney* court based its decision on *People v. Medrano*, 282 Ill. App. 3d 887 (1996), which reasoned in a footnote that states:

"Although section 5—8—4(a) does not specifically indicate that there must be a proximate connection between the Class X or Class 1 felony and the 'grievous bodily injury' suffered by the victim, such is a reasonable interpretation of the statute's plain language, particularly in light of the statute's purpose in punishing the defendant for those crimes which deserve 'special treatment.' [Citation.] It is also appropriate to read section 5—8—4(a) in this way in light of the established principle that any ambiguity in penal statutes should be construed in favor of the defendant." *Medrano*, 282 Ill. App. 3d at 896-97 n.1.

However, this reasoning is flawed. The plain and ordinary language of the statute does not require a proximate connection between a Class X or a Class 1 felony and the grievous bodily injury. There exists no ambiguity that must be construed in anyone's favor. The statute is clear and unambiguous, and both *Whitney* and *Medrano* err when they read additional requirements into the statute. We find compelling the reasoning employed in *People v. Syverson*, 293 Ill. App. 3d 199 (1997). In *Syverson*, the defendant entered the home of his estranged wife and fired several shots, missing his wife but striking and killing her male guest. The defendant was found guilty of the Class X felony of home

invasion (720 ILCS 5/12—11(a)(1) (West 1994)) and guilty but mentally ill of second-degree murder (720 ILCS 5/9—2(a)(1) (West 1994)) and was sentenced to consecutive terms of imprisonment. *Syverson*, 293 Ill. App. 3d at 200-01. The appellate court held that "[t]he plain language of the statute does not require that the injury be inflicted as part of the triggering felony. So long as a Class X or Class 1 felony is committed *and* severe bodily injury is inflicted during a single course of conduct, consecutive sentences are required." (Emphasis in original.) *Syverson*, 293 Ill. App. 3d at 204. We agree with the *Syverson* court that the combination of a Class X or Class 1 felony with severe bodily injury is all that is required by the statute. Therefore, the clear language of the statute mandates the imposition of consecutive sentences in this case. Defendant's contention is without merit; his consecutive sentences are proper.

For these reasons, the judgment of the circuit court of Kane County is affirmed as modified.

Affirmed as modified.

INGLIS and RAPP, JJ., concur.