THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAUL GONZALES, Defendant-Appellant.

First District (5th Division)    No. 59615

Opinion filed December 8, 1978.

Ralph Ruebner and Mark R. Johnson, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Joan S. Cherry, and Victor Gryniewicz, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of murder and sentenced to a term of 25 to 50 years. He presents the following issues for

review: (1) whether he was proved guilty beyond a reasonable doubt; and (2) whether the acquittal of a codefendant based on identical evidence requires the reversal of his conviction.

At approximately 12:30 a.m. on June 20, 1971, 10 teenagers were returning home from a dance in two cars—one following the other. After some passengers had been dropped off, the lead car entered the intersection of 24th Street and Sacramento Boulevard and completed a right turn onto 24th Street. As the second automobile began negotiating the same right turn, shots rang out, the driver (Jose Velasco) slumped forward, and the car veered to the right at a 45-degree angle jumping the curb on the southwest corner and crashing into a building. Before the police or an ambulance came to the scene, the lead car returned and Jose was transported to the hospital in this vehicle. At 1:15 a.m. he was pronounced dead as the result of a bullet wound to the left side of his head. Ernesto Villagomez, his two sisters (Rachel and Rebecca) and Jose's uncle (Angel Diaz) were passengers in the car driven by Jose, and they were interviewed by Officer Keating, a Chicago Police Department homicide investigator, in the hospital parking lot as they awaited news of Jose's condition.

At trial, Ernesto testified that he was seated directly behind Jose and, upon hearing the first shot coming from a northeasterly source, he turned to his left. In the artificial light provided by two streetlights, he observed two young men standing at the northeast corner of the intersection—one, whom he identified as defendant, was leveling a handgun at the Velasco vehicle and the other, identified as Raul Ortiz,[1] was holding a handgun which was pointed in a downward direction. Just before the vehicle collided with the building, Ernesto observed defendant fire a second shot. Thereafter, he saw defendant and Ortiz fire five to six more rounds—some of which struck the car. In his direct testimony, Ernesto stated that defendant and Ortiz fired at the car while standing on the curb. On cross-examination, he was impeached by testimony given at the preliminary hearing—that the gunmen stood on the sidewalk as they fired. Some portions of the sidewalk and curb were separated by bushes, but there was no testimony indicating that Ernesto's view was obstructed by the bushes.

Ernesto testified that when questioned by Keating in the hospital parking lot, he identified defendant by his nickname ("Rayo") and by describing him. When he discussed with Keating the fact that defendant was a member of a group called the Latin Kings who had previously been charged with a murder occurring at a school dance, Keating indicated that he also knew defendant from a prior arrest. Although Ernesto was acquainted with defendant and Ortiz for a 2½ year period prior to the

[1]Raul Ortiz was jointly tried with defendant and acquitted.

incident in question, he did not give Ortiz's name or nickname to Keating but described him as being Mexican or Puerto Rican with straight black hair, 5'6" in height, weighing 160 pounds, and wearing a white "T" shirt.

On cross-examination, Ernesto testified that he was friendly with some members of the Latin Kings and another group called the Bishops, but he was not a member of either organization. He further said that he and defendant had a discussion, but not an argument, about wearing a certain sweater around school. This sweater was not described, except that Ernesto stated that it did not bear the name "Bishops."

Rachel, Rebecca and Angel testified for the State to substantially the same account of the shooting as did Ernesto. Rachel and Angel identified only defendant as an assailant, but Rebecca identified him and Ortiz as the gunmen.

Keating was called as a defense witness and testified that on the night in question Rachel, Rebecca and Angel told him that they had ducked down in the car during the attack and did not see who was firing at them; that Ernesto told him defendant had fired at the car from the mouth of an alley some 100 feet east of the intersection; and that he was not given the name or nickname of Ortiz—who was referred to by Ernesto as the "second gunman" and the "unknown individual." Furthermore, Keating noted that the witnesses were very emotional and upset at the time of the interview; that the interview and his report concerning it were his only involvement with the case; and that he learned for the first time at trial that Rachel, Rebecca and Angel claimed to have seen one or both of the gunmen. Those three witnesses had previously testified that they told Keating they could identify one or both gunmen.

Defendant and Ortiz each presented alibi defenses, and defendant and several defense witnesses testified that prior to and after the shooting defendant was clad in a loud pink shirt and trousers. It is undisputed that he wore pink trousers at 4 p.m. on June 20 when he appeared in a lineup. Ernesto had testified that at the time of the occurrence defendant was wearing a black shirt and yellow trousers.

Defendant also testified that a couple of days prior to the incident in question, he saw Ernesto wearing a "Bishop" sweater while attending Harrison High School and ordered him not to wear it again. According to defendant, an argument ensued and he slapped Ernesto, who stated he would get even with defendant for the slapping.

After closing arguments, the trial court noted that for the reasons stated below it was unwilling to accept much of the testimony elicited by both sides:

"To begin with, I will begin not with Ernesto but with the other three witnesses. For the State's Attorney to say that they weren't

impeached either by conduct or by their statement is to flay [*sic*] right in the face of the interview with Detective Keating who certainly was shown to have no motive to lie. The witnesses were impeached.

\* \* \* This was a single identification and single witness case. This case is certainly gang related. The State witnesses will not have you believe it was gang related and only until Ernesto was forced into saying it was, that there was something about jackets and sweaters and gangs, does the truth begin to come out.

Looking at the State's witnesses after Keating has testified, certainly the three witnesses, Rachel, Rebecca, and Angel Diaz are virtually destroyed as far as their identifications. I believe without explanation, at least if the witness had said, yes, we said we ducked but we really saw it, we were afraid but we really saw it, perhaps I could go along with the State's argument.

It is obvious that from the time of their interview by Keating, to the time they appeared at the [lineup], they would have to tell the police certainly that they could make an identification, otherwise they wouldn't have been brought through the neighborhood or to the lineup. It would be a useless act. But certainly this is an unexplained—the witnesses won't say that. They say that they, in fact, told Keating. I can't believe that.

If they said that they had told Keating what Keating says they told him, and if they had offered an explanation, perhaps you could explain it away as Mr. Levinson attempts to explain it away in argument.

And leaving Ernest Villagomez for a moment, and looking over to the defense side of the case, I have heard witnesses not only impeached, contradicted and in the case, certainly in the case of Ortiz and to some extent Gonzales, certainly knocked off the witness [stand] by the testimony that they gave, so there has been a great deal of impeachment and contradictions involved in both sides of the case.

My own thought in this is, I feel that beyond a reasonable doubt that as far as Raul Gonzales, I feel that his guilt has been established, that I can rely, I feel that I can rely on the identification of Ernesto Villagomez.

From the standpoint that he immediately, this was an immediate sort of an immediate outcry type thing, that his identification later in the station of both Gonzales and Ortiz in the company of Rebecca, Rachel and Angel Diaz, at this point I think that certainly the influence of the gang membership, and the gang affiliation and the gang, certainly bad blood between the two gangs is brought to

bear, and I can't rely on the identification then of what he says is the Number 2 man because now the witnesses are away from their immediate statements and for some reason have had time to do something.

So, for that reason, enter a finding of guilty as to Raul Gonzales and a finding of not guilty as to Raulie Ortiz."

OPINION

Defendant first contends that he was not proved guilty of murder beyond a reasonable doubt. It is his position that Ernesto's inconsistent testimony regarding the location of the gunmen (curb versus sidewalk), his description of defendant's clothing as black and yellow, when defendant and others testified he was wearing pink clothing, and his bias due to a prior argument with defendant render Ernesto's testimony unworthy of belief. We cannot agree.

Initially, it should be noted that defendant asserted in his briefs and during oral argument in this court that the issues must be resolved exclusively upon the strength or weakness of Ernesto's testimony when viewed in light of that of Keating, as such was the basis for the finding of guilt. As the trial court, with the exception of those two witnesses, expressly rejected the testimony of the prosecution's identification witnesses and the alibi witnesses of the defense, we view the scope of our review as accordingly narrowed.

In a bench trial, the trial court determines the credibility of all the witnesses and the weight to be given their testimony and its finding of guilt will be disturbed only if the evidence is so unreasonable, improbable and unsatisfactory as to leave a reasonable doubt as to defendant's guilt. (*People v. Catlett* (1971), 48 Ill. 2d 56, 268 N.E.2d 378.) "[A] reviewing court should not focus on isolated instances of testimony but must instead examine the evidence as a whole." *People v. Fabian* (1976), 42 Ill. App. 3d 934, 937, 356 N.E.2d 982, 985.

■■ The testimony of a single witness, if positive and credible, is sufficient to sustain a conviction. (*People v. Harrison* (1978), 57 Ill. App. 3d 9, 372 N.E.2d 915.) In this regard, it has been noted that clear and convincing testimony does not require it to be uncontradicted and unimpeached. (*Harrison; People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.) Moreover, an identification is strengthened to the extent that the witness had a prior acquaintanceship with the accused. *People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 329 N.E.2d 262.

Here, throughout the incident in question, Ernesto observed defendant under favorable lighting conditions, and our review of the record reveals that Ernesto's testimony was clear and positive in nature. Although a discrepancy exists between his testimony at the preliminary

hearing and at trial regarding defendant's location at the time of the shooting, there is no indication that his view of the gunmen was in any way obstructed. Moreover, on redirect examination, he testified that he had habitually referred to any ground upon which a pedestrian walks as the sidewalk, including areas more precisely described as the curb. Under the circumstances, we consider this discrepancy to be minor in character.

Turning to the question of the clothing worn by defendant, we initially note that the trial court was under no obligation to believe the defense testimony that defendant wore pink clothing on the night in question. (*Catlett.*) Additionally, while grounding its decision on Ernesto's testimony, we note that the court relied heavily upon Ernesto's prior acquaintanceship with defendant and the immediacy of his identification of defendant at a point in time too close to the evening's events to indicate fabrication. The record supports this reliance by the court and, under the circumstances, we believe the variance in the testimony concerning defendant's clothing should not cause Ernesto's testimony to be unbelievable.

Defendant also argues that the evidence of the dispute between himself and Ernesto regarding the wearing by the latter of a Bishop sweater renders the identification untrustworthy as the result of bias. Defendant did not describe the sweater, but his testimony implies that it in some manner connoted an affiliation with the Bishops. He further testified that he cautioned Ernesto not to wear it, as such conduct increased the tension between the gangs; that as Ernesto was unresponsive, he (defendant) slapped him; and that Ernesto walked away threatening to get even. Ernesto testified only that he and defendant had a discussion, but not an argument, about a sweater.

■■ "The bias of a witness, whether it be favorable to or adverse to the defendant, is always pertinent on the question of the credibility of the witness. [Citations.]" (*People v. Henson* (1975), 32 Ill. App. 3d 717, 720, 336 N.E.2d 264, 266.) Here, the trial court concluded from the testimony regarding the sweater that there was animosity between the Bishops and the Latin Kings and that some of the prosecution witnesses were affiliated with the Bishops, and some of the defense witnesses with the Latin Kings. Because of the inconsistencies in the testimony and the possibility of gang related bias, the court rejected the testimony of both sides, except for what it termed the spontaneous and positive identification of defendant by Ernesto made shortly after the incident. Unlike the other State's witnesses, whose ability to identify defendant as one of the gunmen surfaced after the passage of time, it appears that Ernesto identified defendant during the Keating interview in the parking lot shortly after the occurrence. Thus, it is indicated that bias was considered by the trial

court as a factor in assessing credibility, but it concluded that any such bias did not come into play until after the Keating interview. Considering all the facts and circumstances, we cannot say that such a conclusion was unreasonable.

We would note further our belief that the facts in the cases cited by defendant are distinguishable from those in the case at bar. In *People v. Williams* (1976), 65 Ill. 2d 258, 357 N.E.2d 525, *aff'd* (1975), 34 Ill. App. 3d 136, 339 N.E.2d 314, the State's identification witness consistently testified in a contradictory fashion regarding virtually every detail except for his identification of defendant which was made only after the witness was informed that he himself would be charged with the murder. *People v. Hister* (1975), 60 Ill. 2d 567, 328 N.E.2d 531, *aff'd* (1974), 20 Ill. App. 3d 933, 314 N.E.2d 562, involved several identification witnesses who contradicted each other and themselves about having seen defendant in the area of the homicide and concerning defendant's reasons for harming the deceased, as well as the details of the shooting itself. *People v. Sowers* (1976), 36 Ill. App. 3d 599, 344 N.E.2d 800, and *People v. Dawson* (1961), 22 Ill. 2d 260, 174 N.E.2d 817, involved evidence that was improbable and contrary to human experience where, in the course of a purported robbery, each defendant returned most of the proceeds to the victim and otherwise by bizarre behavior assured his subsequent identification.

■ Here, the trial court viewed the demeanor of the witnesses and heard all of the evidence including the discrepancies in Ernesto's testimony and the revelation of gang rivalry. It found Ernesto to be a credible witness and particularly reliable because of his immediate identification of defendant during the Keating interview. From our examination of the record, we do not find that the evidence was so improbable, unsatisfactory, or unreasonable as to raise a reasonable doubt as to defendant's guilt.

Defendant next contends that his conviction ought to be reversed, as it was based upon evidence identical to that presented against his codefendant, who was acquitted.

The applicable rule of law is stated as follows:

"[W]hen one defendant is found guilty and a co-defendant found not guilty on evidence identical in all respects as to both defendants, the guilty finding will not be allowed to stand. [Citation.] However, it is equally well settled that when there is the slightest difference in the evidence as between two persons jointly tried, the trier of fact may weigh the evidence and make allowance for such difference. [Citation.] If there is any difference in the evidence, the mere fact that one defendant was convicted and one defendant acquitted does not raise a reasonable doubt as to the guilt of the convicted defendant. In such cases the acquittal of one

defendant is not a ground for reversal of the conviction of the other. [Citation.]" *(People v. Taylor* (1974), 25 Ill. App. 3d 396, 403, 323 N.E.2d 388, 393. Accord, *People v. Beasley* (1976), 41 Ill. App. 3d 550, 353 N.E.2d 699; *People v. Boyce* (1976), 41 Ill. App. 3d 53, 353 N.E.2d 287; *People v. Carter* (1974), 19 Ill. App. 3d 21, 311 N.E.2d 213.)

Stated in another manner, where there is no plausible construction of the evidence which would furnish a reasonable basis for the finding of guilty as to one defendant and not guilty as to the other, the conviction must be reversed. *People v. Brown* (1977), 47 Ill. App. 3d 920, 365 N.E.2d 514; *People v. Griffin* (1967), 88 Ill. App. 2d 28, 232 N.E.2d 216.

Here, Ernesto identified defendant by nickname and by description during the Keating interview; but, as to Ortiz, he gave only a description. Defendant argues that as Ernesto testified he knew both himself and Ortiz for about three years and, because Keating testified that Ernesto said he could identify both offenders and subsequently did so, the failure to initially relate Ortiz's name or nickname to Keating was the result of a lapse of memory and, in effect, should be considered as an immediate and identical identification of both men.

It is significant, however, that only as to defendant did Ernesto narrow the scope of the police search by naming defendant in the Keating interview and stating that he belonged to a local gang but making no reference to Ortiz's name or that he was indigenous to the neighborhood. Moreover, according to Keating, Ernesto referred to Ortiz as the "second gunman" and the "unknown individual," negating any inference that on the night in question he recognized Ortiz as a person whom he knew.

Concerning such an omission, it has been said:

"When a witness given an earlier opportunity fails to assert a fact, the credibility of his later testimony as to the existence of such fact is adversely affected. 'The rule is that the omission of a witness to state a particular fact under circumstances rendering it likely that he would state that fact, if true, may be shown to discredit his testimony as to such fact.' [Citation.]" *(People v. Fabian,* 42 Ill. App. 3d 934, 938, 356 N.E.2d 982, 986.)

At the time of the Keating interview, Ernesto would have had equal interest in assisting the police in capturing both assailants of his friend. Thus, if he had actually recognized Ortiz as the second gunman, it appears inconceivable that he would have given only a generalized description of him.

■■ In any event, it is clear that Ernesto's identification of defendant carried more weight than that of Ortiz. Ernesto did not identify the person he knew as Raulie Ortiz as the second gunman until he viewed the lineup. Since it was then that the change in the statements of the

occurrence witnesses became apparent, the trial court chose not to rely on identifications having an origin in the lineup. Such is reasonable, as Ortiz could well have been identified solely because he was a known associate of defendant and appeared in the same lineup with him. Viewed in this context, the record demonstrates a reasonable distinction between the evidence bearing directly on the guilt or innocence of defendant and Ortiz. Accordingly, we hold that the latter's acquittal does not, in our opinion, raise a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment appealed from is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.