THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARK ENGLISH, Defendant-Appellant.

First District (5th Division)    No. 1—99—3465

Opinion filed September 27, 2002.—Rehearing denied October 28, 2002.

REID, J., concurring in part and dissenting in part.

Michael J. Pelletier and Sarah M. Jacoby, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Mary L. Boland, and Shannon B. Rigby, Assistant State's Attorneys, of counsel), for the People.

JUSTICE QUINN delivered the opinion of the court:
Following a jury trial, Mark English was convicted of attempted

murder and armed robbery. English was sentenced to 25 years for the attempted murder of Officer Mashemier, 25 years for the attempted murder of Detective Wojcik, and 20 years for armed robbery, all to run concurrently. On direct appeal, this court held that English was not subject to the Illinois "truth in sentencing" law contained in Public Act 88—680 (Pub. Act 88—680, eff. January 1, 1995), also known as the "Safe Neighborhoods Law," because that public act violated the single subject rule of the Illinois Constitution. *People v. Cervantes*, 189 Ill. 2d 80 (1999). *People v. English*, No. 1—97—3511 (1999) (unpublished order under Supreme Court Rule 23).

English subsequently filed a *pro se* petition for postconviction relief on August 12, 1999. In that petition, English alleged his trial lawyer was ineffective for failing to investigate a witness, Dr. Hoffa, and for failing to present expert testimony that the gun defendant was carrying was inoperable at the time of the crime. The petition also alleged that his appellate lawyer was ineffective for failing to raise reasonable doubt as an issue in the direct appeal. The *pro se* petition for postconviction relief was summarily dismissed as frivolous and without merit. English now appeals from the order dismissing his petition for postconviction relief. For the following reasons, we affirm in part, reverse in part and remand for further proceedings.

## BACKGROUND

On July 14, 1997, Mark English and Thomas Jimenez were charged with two counts of attempted first degree murder of a peace officer (720 ILCS 5/8—4, 9—1 (West 1996)), one count of armed robbery (720 ILCS 5/18—2 (West 1996)), one count of robbery (720 ILCS 5/18—1(a) (West 1996)), one count of unlawful use of a weapon by a felon (720 ILCS 5/24—1.1 (West 1996)), eight counts of aggravated unlawful restraint (720 ILCS 5/10—3.1(a) (West 1996)) and eight counts of unlawful restraint (720 ILCS 5/10—3(a) (West 1996)). The two men were tried before the same jury.

The following evidence was adduced at trial. On October 5, 1995, at around 11 p.m., two armed men wearing women's nylons over their faces entered Armitage Liquors, which had a bar in the rear of the store. The taller of the two men was carrying an "Uzi" machine gun and the shorter man was carrying a shiny handgun. The two men told the people in the store to get down on the floor or they would be shot. The men took Orlando Perez, the manager, into the office. They removed his wallet, bracelet and $600 cash from his pocket. Perez was then instructed to open the safes in the office. Upon opening the smaller of the safes, it was discovered that it was empty. Perez then informed the two armed men that he did not know how to open the

larger of the safes. Learning this, according to Perez, the men hit him on the head with a gun. Perez testified that he told the men that he had some money in his station wagon parked at the back. The two men then took 9 or 10 of the bar patrons into the basement. Once they were secured in the basement, the men took Perez to the back exit of the liquor store, which was a door with a lock and a metal burglar's gate behind it. When Perez opened the door, he heard people shouting, then heard gunshots. He testified he felt a bullet hit him in the right upper thigh. Perez started yelling "I'm the manager!" when he realized it was the police. He opened the door and the police entered the bar. Perez was subsequently handcuffed and taken to Illinois Masonic Hospital. At the hospital, the police showed him his chain and bracelet, which he identified as his.

Elizabeth Ramirez testified that when she went to the store, the steel gates of the store were partially closed. She looked through the window of Armitage Liquors and saw a man pointing a gun at the person behind the register. She also saw another man toward the back of the bar pointing a gun at a person on the floor. Ramirez testified that she got into a car with her friend and drove three blocks to where there were uniformed police officers. Ramirez told the officers that the liquor store was being robbed. The police put her into an unmarked police car and drove her back to the scene.

After the police got Ramirez to describe what she had seen, they approached the building. Detective Wojcik testified the front entrance was blocked by the steel shutters that were pulled down. The steel door was locked. Detective McMurray covered the building on the Kostner Avenue side, while Officer Sineni covered the front door on Armitage Street. Detective Wojcik and Officer Mashemier went around to the back and climbed a gate to get into the courtyard behind the store. Wojcik went down the external stairs leading to the basement and saw seven or eight people standing in the basement. When he came back up the stairs, the back door to the liquor store opened. Wojcik and Mashemier saw two men with nylons over their faces and guns in their hands pointed at Perez. They later identified these two men as Mark English and Thomas Jimenez. Wojcik and Mashemier testified that they identified themselves as police officers and demanded that the two men drop their guns. Wojcik and Mashemier testified that, after they announced their office, the two offenders turned their guns on them. Wojcik and Mashemier testified they both fired their weapons, Wojcik firing nine shots and Mashemier firing three shots. Perez and three of the patrons of the liquor store testified that they did not hear identifications or warnings before hearing shots fired. Detective McMurray and another officer on the scene testified

that they heard the identifications and warnings prior to hearing the shots.

In addition to shooting Perez, the manager of the liquor store, the police also shot English, who fell to the ground approximately 12 feet back from the door. Wojcik and Mashemier testified that, before Perez could unlock the gate, they observed English on the ground feeling around for his gun. English retrieved his gun, lifted his arm and pointed the Uzi at the officers. They ordered English to leave the weapon alone. When he would not comply, Wojcik fired three more shots at English. Wojcik testified he stopped firing when he saw English's arm fall and the gun hit the ground. Perez opened the gate after the second round of gunfire.

Once Wojcik and Mashemier were let into the building, Wojcik stepped on English's hand and picked up the fallen weapon. In case he needed another weapon when he tried to apprehend Jimenez, Wojcik testified, he pointed the gun at the ceiling, tried to fire it, but the trigger would not pull. He tried the safety on both sides of the weapon and tried pulling the bolt back to clear the gun, but to no avail. English's gun contained 13 bullets. Wojcik gave the gun to Mashemier and handcuffed English, who had been shot a total of nine times.

Wojcik then moved to apprehend Jimenez, who was lying on his back in the store, having been shot in the leg. Wojcik recognized him as the man with the chrome pistol. Jimenez said "don't shoot, you got me." Wojcik recovered a chrome pistol from underneath the bar. When paramedics arrived on the scene, they removed the nylons from the offenders' faces. Detective James Gilger rode in the ambulance with Jimenez. He searched Jimenez' person during the ride to the hospital. Gilger recovered dark blue gloves and the panties that had been cut from the nylon stocking Jimenez wore. Detective Thomas Finnelly rode in the ambulance with English. Finnelly searched English and recovered a gold chain, bracelet, a gold earing and a wad of $20 bills. Perez subsequently identified the chain and bracelet as his property.

Officer Peter Mashemier's testimony corroborated that of Detective Wojcik. Mashemier testified he clearly heard Wojcik yell "police" and saw the pointing of weapons by the offenders before the shooting started. Mashemier testified he thought they would be killed if they did not stop the offenders. Testimony of Detectives John McMurray and Thomas Finnelly was similarly corroborative of Wojcik's version of the events.

English did not testify in his own behalf. The trial court explained his rights to him and he waived his right to testify in open court.

Jimenez presented one witness, Juan Delgado, the bartender at Armitage Liquors. Delgado testified that he knew Jimenez, who was

sitting at the bar when two masked gunmen entered. Delgado testified that Jimenez hid between the dart machine and jukebox when the shooting started. In rebuttal, the State called Detective Michael Mason, the police detective who interviewed Delgado at the time. According to Mason, Delgado did not know Jimenez and did not exonerate Jimenez in his initial statement.

The jury found Mark English guilty of the attempted murder of Officer Mashemier and Detective Wojcik. The jury also found him guilty of armed robbery. Jimenez was found guilty of the armed robbery, but not attempted murder. English was sentenced to 25 years for the attempted murder of Officer Mashemier, 25 years for the attempted murder of Detective Wojcik, and 20 years for armed robbery. All of the sentences were entered so as to run concurrently.

On direct appeal, this court held that English was not subject to the Illinois "truth in sentencing" law contained in Public Act 88—680 (Pub. Act 88—860, eff. January 1, 1995) because that public act violated the single subject rule of the Illinois Constitution. This court also held that English was eligible for day-for-day good-conduct credit. *People v. English*, No. 1—97—3511 (1999) (unpublished order under Supreme Court Rule 23).

On August 12, 1999, English filed a *pro se* petition for postconviction relief. In that petition, English claimed his trial lawyer was ineffective for: (1) failing to investigate a witness, Dr. Hoffa; (2) failing to present expert testimony that the gun English was carrying was inoperable at the time of the crime; (3) failing to allow English to testify; and (4) failing to object to hearsay during the trial. English claimed his appellate lawyer was ineffective for not raising his trial counsel's effectiveness on appeal and for not raising reasonable doubt as an issue on appeal. In his postconviction petition, defendant averred that he had gone to Armitage Liquors "to take money from Orlando Perez." English admitted he was armed but asserted that the gun was a "a 'tool' used to frighten and intimidate Orlando Perez." As to the patrons in the store, defendant asserted he "took them into the basement out of harm's way." He also admitted that as he exited the rear door, he saw police officers. Further, he "knew he was caught. He slammed the door in their faces to prevent them from entering the establishment. To buy some time. To distance his gun and mask from his person." English alleged that the police shot him as he lay on the floor after he "surrendered." The *pro se* petition for postconviction relief was summarily dismissed as frivolous and without merit. In this appeal, new appellate counsel argues that trial counsel was ineffective for failing to investigate a potential witness, Dr. Hoffa, and for failing to present expert testimony that defendant's gun was inoperable and

that appellate counsel was ineffective for not raising reasonable doubt as an issue in the appeal of defendant's convictions for attempted murder.

## ANALYSIS

### I

■ The Illinois Postconviction Hearing Act (Act) (725 ILCS 5/122—1 (West 1996)) provides a mechanism by which those under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998), citing 725 ILCS 5/122—1 (West 1994). Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place. The petition must clearly set forth the respects in which the petitioner's rights were violated. *Coleman*, 183 Ill. 2d at 379, citing 725 ILCS 5/122—2 (West 1994). Section 122—2 of the Act requires that affidavits, records, or other evidence supporting the petition's allegations be attached to the petition. *Coleman*, 183 Ill. 2d at 379, citing 725 ILCS 5/122—2 (West 1994).

Under the Act, a postconviction proceeding not involving the death penalty consists of three stages. *People v. Edwards*, 197 Ill. 2d 239, 243-44 (2001), citing *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996).

> "At the first stage, the circuit court must independently review the post-conviction petition within 90 days of its filing and determine whether 'the petition is frivolous or is patently without merit.' 725 ILCS 5/122—2.1(a)(2) (West 1998). If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122—2.1(a)(2) (West 1998). A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' *Gaultney*, 174 Ill. 2d at 418, citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988). The 'gist' standard is 'a low threshold.' *Gaultney*, 174 Ill. 2d at 418. To set forth the 'gist' of a constitutional claim, the post-conviction petition 'need only present a limited amount of detail' (*Gaultney*, 174 Ill. 2d at 418) and hence need not set forth the claim in its entirety. Further, the petition need not include 'legal arguments or [citations] to legal authority.' *Gaultney*, 174 Ill. 2d at 418." *Edwards*, 197 Ill. 2d at 244.

Our review of the circuit court's summary dismissal of defendant's postconviction petition is *de novo*. " 'Due to the elimination of all factual issues at the dismissal stage of a post-conviction proceeding,

the question is, essentially, a legal one, which requires the reviewing court to make its own independent assessment of the allegations. Thus, a court of review [is] free to substitute its own judgment for that of the circuit court in order to formulate the legally correct answer.' " *Edwards*, 197 Ill. 2d at 247, quoting *Coleman*, 183 Ill. 2d at 388.

## II

English argues that his postconviction petition should not have been dismissed as frivolous or patently without merit by the circuit court because the petition raises a nonfrivolous claim that his trial counsel was ineffective in failing to investigate a witness and failing to present expert testimony that the weapon defendant carried was inoperable. Specifically, English claims that trial counsel failed to contact English's doctor, Dr. Hoffa. According to English, Dr. Hoffa would have testified that all of English's injuries were consistent with someone who was shot while lying on the ground. English also argues that his appellate counsel was ineffective for failing to argue that the charges of attempted murder were not proven beyond a reasonable doubt. English claims that, because he was jointly tried with Jimenez on the same evidence, it was logically inconsistent for the same jury to convict English and acquit Jimenez of the attempted murder charges. In both instances, because English's allegations of ineffective assistance presented the gist of a meritorious constitutional claim, he argues, this court should reverse his convictions.

The People respond that English's claims of ineffective assistance on the part of trial counsel are waived because he failed to raise the issues on direct appeal. See *People v. Gaultney*, 174 Ill. 2d 410, 416 (1996). At the time of the direct appeal, they point out, English was aware of whether trial counsel was effective. They argue in addition thereto that even if this Court does not deem these issues waived, the claims cannot satisfy either prong of the test articulated in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). As a result, they conclude it was proper for the trial court to dismiss English's petition. We reject the People's argument that the petition's allegations of the ineffectiveness of trial counsel are waived. The doctrine of waiver will be relaxed where the facts relating to the claim do not appear on the face of the original appellate record or where the alleged waiver stems from the incompetence of appellate counsel. *People v. Mahaffey*, 194 Ill. 2d 154, 171 (2000). As both of these exceptions arguably apply to the instant case, we will review defendant's claims.

"In order to succeed on a claim of ineffective assistance of trial

counsel, a defendant must satisfy the two-pronged *Strickland* test: a defendant must allege facts which demonstrate that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." *People v. Enis*, 194 Ill. 2d 361, 376 (2000), citing *Strickland v. Washington*, 466 U.S. 668, 687, 694, 80 L. Ed. 2d 674, 693, 698, 104 S. Ct. 2052, 2064, 2068 (1984); *People v. Wilson*, 191 Ill. 2d 363, 370 (2000). A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Enis*, 194 Ill. 2d at 376-77, citing *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Unless the defendant satisfies both prongs of the *Strickland* test, a court of review cannot conclude that his conviction resulted from a breakdown of the adversarial process. *People v. Johnson*, 205 Ill. 2d 381, 399 (2002), citing *People v. Munson*, 171 Ill. 2d 158, 184 (1996).

■ Decisions concerning whether to call certain witnesses on a defendant's behalf are matters of trial strategy, reserved to the discretion of trial counsel. *Enis*, 194 Ill. 2d at 378, citing *People v. West*, 187 Ill. 2d 418, 432 (1999). Such decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence, and are, therefore, generally immune from claims of ineffective assistance of counsel. *Enis*, 194 Ill. 2d at 378, citing *People v. Reid*, 179 Ill. 2d 297, 310 (1997). This is not the case, however, where counsel's strategy was so unsound that no meaningful adversarial testing was conducted. *Enis*, 194 Ill. 2d at 378. "Whether defense counsel's failure to investigate amounts to ineffective assistance is determined by the value of the evidence that was not presented at trial and the closeness of the evidence ***." *People v. Montgomery*, 327 Ill. App. 3d 180, 185 (2001); *People v. Smith*, 326 Ill. App. 3d 831, 856 (2001).

We first address defendant's allegations regarding the failure to call Dr. Hoffa. In the affidavit attached to his *pro se* postconviction petition, English stated, in relevant part, as follows:

"5. While out on bond I sought the opinion of Dr. Hoffa at Illinois Masonic Hospital concerning the surgery recommended by doctors at Cook County Hospital. During that consultation, Dr. Hoffa expressed an opinion that all of my injuries received as a result of being shot were consistent with my claims that I was lying down at the time I was shot. I have no entrance wounds in my chest. All of my injuries traveled at an angled trajectory from the lower portion of my body towards the upper portion.

6. I asked Dr. Hoffa if he would be willing to testify to his remarks and observations in a court of law. He responded that if properly subpoenaed he would testify.

7. I notified my attorney *** about the conversation I had with Dr. Hoffa and stated that he was willing to testify. [My attorney] informed me that he would take care of that when the time came. Subsequent conversations with my attorney revealed that he believed the state could not meets [sic] its burden of proving me guilty of attempted murder and that Dr. Hoffa's testimony was not needed and would do nothing to bolster my defense.

\* \* \*

9. During this same period of time I informed my attorney of my intention of taking the stand in my own defense. Mr. Johnson and I argued about my decision and [he] repeatedly informed me that I would lose my case if I took the stand in my own defense.

\* \* \*

11. The testimony of Dr. Hoffa could have provided support to my defense in that I never pointed a gun at the two Chicago Police Officers or attempt [sic] to kill them. Furthermore, my testimony would have corroborated his testimony, if I had been allowed to testify by my attorney. Our combined testimonies [sic] would have contradicted and impeached the testimony of the police officers who claimed that I pointed my gun at them."

■ The record supports the fact that defendant's trial counsel's decision not to call Dr. Hoffa was a matter of strategy. Defendant's trial counsel had defendant exhibit his wounds to the jury during his cross-examination of Detective Wojcik. Trial counsel cross-examined every witness regarding whether they heard the police identify themselves and whether they heard sirens. He brought out that Wojcik was wearing civilian clothing. Clearly, trial counsel's strategy was to show that defendant did not know that the victims were police officers, thus negating the last element in the charge of attempted murder of a police officer. See 720 ILCS 5/8—4, 9—1 (West 1996).

Defendant's evidentiary affidavit attached to his postconviction petition sets out the fact that defendant advised his trial counsel of Dr. Hoffa's potential testimony. Trial counsel explained that he did not believe the State could prove defendant guilty of attempted murder beyond a reasonable doubt and that Dr. Hoffa's testimony "would do nothing to bolster" his defense. This allegation demonstrates that trial counsel's failure to call Dr. Hoffa was a matter of trial strategy. The fact that the police testified that Wojcik shot defendant while he lay on the ground would also support trial counsel's belief that Dr. Hoffa's testimony would not significantly aid defendant. Further, call-

ing Dr. Hoffa to testify that he believed the bullets' trajectories were consistent with defendant being on the ground would highlight the fact that defendant never testified that he was lying down when he was shot. The record demonstrates that the trial court advised defendant that he had a right to testify in his own defense if he so desired. Defendant declined the opportunity. It cannot seriously be argued that trial counsel's strategy in not calling Dr. Hoffa was so unsound that "no meaningful adversarial testing was conducted." *Enis*, 194 Ill. 2d at 378. Consequently, defendant has not satisfied the first prong of the *Strickland* test and the trial court properly dismissed his claim as it relates to the failure to call Dr. Hoffa.

■ We next consider defendant's assertion that his trial counsel's failure to secure an expert to testify that his Uzi machine gun was inoperable constituted ineffective assistance of counsel. We first note that, unlike the potential testimony of Dr. Hoffa, defendant's petition does not contain factual assertions that an expert would testify that the machine gun was inoperable. Even if the petition contained such an allegation, defendant's claim would not meet the criteria of ineffective assistance as set forth in *Strickland*. If an expert had been retained by defense counsel, the expert's report would have reflected one of two findings. First, the machine gun may have been operable. The fact that the police witnesses testified that they could not fire it does not lead to the conclusion that an expert would have a similar problem under all circumstances. Second, the expert could find that the machine gun was inoperable. This fact would be of no assistance to defendant. The People could argue that the defendant attempted to fire the weapon at the police and it was only due to the fortuitous fact that the weapon was broken that the police officers were not killed. Again, defendant's refusal to testify is of significance. The expert's report would not reflect whether defendant had knowledge that the machine gun was inoperable. Further, even if a forensic expert testified, defendant's argument that he could not be convicted of attempted murder with an inoperable weapon is without merit. Section 8—4(b) of the Criminal Code of 1961 (720 ILCS 5/8—4(b) (West 1996)) provides that impossibility may not be a defense to a charge of attempt and this court has rejected impossibility as a defense to attempted murder. See *People v. Spiezio*, 191 Ill. App. 3d 1067, 1073 (1989).

We note that all of the issues raised in defendant's postconviction petition that have been raised in this appeal address defendant's convictions for attempted murder. None of the allegations relate in any way to the charge of armed robbery. Indeed, defendant's evidentiary affidavit attached to his postconviction petition contains

admissions sufficient to convict the defendant of armed robbery. A reading of defendant's version of events as contained in this affidavit amply demonstrates why defense counsel advised defendant not to testify.

■ We next address defendant's claims that his appellate counsel was ineffective for failing to argue the insufficiency of the evidence in support of defendant's convictions for attempted murder of a police officer. Claims of ineffective assistance of appellate counsel are also evaluated under the *Strickland* test. *Enis*, 194 Ill. 2d at 377, citing *People v. Childress*, 191 Ill. 2d 168, 175 (2000). A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts demonstrating that such failure was objectively unreasonable and that counsel's decision prejudiced defendant. If the underlying issue is not meritorious, then defendant has suffered no prejudice. *Enis*, 194 Ill. 2d at 377, citing *Childress*, 191 Ill. 2d at 175. "Normally, appellate counsel's choices concerning which issues to pursue are entitled to substantial deference. *People v. Mack*, 167 Ill. 2d 525, 532-33 (1995). Appellate counsel need not brief every conceivable issue and may refrain from developing nonmeritorious issues without violating *Strickland* (*People v. Simms*, 192 Ill. 2d 348, 362 (2000)), because the defendant suffered no prejudice unless the underlying issue is meritorious (*People v. Easley*, 192 Ill. 2d 307, 329 (2000). Consequently, the prejudice inquiry requires us to examine the merits of the claims not raised by appellate counsel." *People v. Johnson*, 205 Ill. 2d 381, 406 (2002). In reviewing the sufficiency of the evidence, the court must determine whether, in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317-18, 61 L. Ed. 2d 560, 572-73, 99 S. Ct. 2781, 2788-89 (1979).

Defendant's argument on appeal is that defendant's prior appellate counsel was ineffective for failure to raise the issue of the sufficiency of the evidence on the attempted murder charge because codefendant Jimenez was found not guilty by the same jury that convicted defendant. Defendant argues, "[W]here there is no plausible construction of the evidence which would furnish a reasonable basis for the finding of guilty as to one defendant and not guilty as to the other, the conviction must be reversed." *People v. Gonzales*, 67 Ill. App. 3d 215, 222 (1978). However, the failure to convict one codefendant does not raise a reasonable doubt as to the guilt of the other codefendant unless it is demonstrated that the evidence against both defendants is identical in all respects. *People v. Johnson*, 272 Ill. App. 3d 479, 486 (1995), citing *People v. Vriner*, 74 Ill. 2d 329, 343 (1978).

" 'The slightest difference in the evidence can be sufficient to support different verdicts. [Citations.]' " *People v. Morrow*, 303 Ill. App. 3d 671, 679 (1999), quoting *People v. Jak*, 207 Ill. App. 3d 762, 767-68 (1990).

■ In the instant case, there were considerable differences as to the evidence presented against each defendant. Detective Wojcik and Officer Mashemier testified that Jimenez ran away and began firing when they announced their office. Defendant fell and picked up his machine gun again, pointing it at the officers until Wojcik shot him again. Wojcik recovered the machine gun from defendant's hand. When Jimenez was arrested, he was unarmed. Further, three of the customers in the bar identified Jimenez as being a customer in the bar. One witness testified that both armed robbers entered the bar together. This would exclude Jimenez as one of the armed robbers. Finally, Juan Delgado testified for Jimenez that Jimenez hid upstairs during the armed robbery. There was much more evidence against defendant than against Jimenez. An examination of the merits of defendant's claims of ineffective assistance of his appellate counsel reveals that defendant suffered no prejudice by counsel's failure to raise the issue of reasonable doubt on appeal. *People v. Easley*, 192 Ill. 2d at 329. Consequently, we affirm the trial court's dismissal of defendant's claim of ineffective assistance on the part of this appellate counsel.

## III

■ Finally, English argues that his sentences for attempted murder must be vacated and the cause remanded for resentencing because Public Act 88—680, which changed the sentencing range from between 15 and 60 years to between 20 and 80 years for attempted murder of a police officer, was found unconstitutional. See *People v. Cervantes*, 189 Ill. 2d 80 (1999). English argues that the attempted murder statute under which he was convicted was enhanced because he attempted to murder a police officer. Other attempted murders did not have their sentencing schemes similarly enhanced. Since the *Cervantes* case held the legislative enactment unconstitutional, and it is void *ab initio*, statutes created or amended by the enactment are similarly invalid. See *People v. Young*, 312 Ill. App. 3d 428, 433 (2000); *People v. Dean*, 175 Ill. 2d 244, 257 (1997); *People v. Gersch*, 135 Ill. 2d 384, 390 (1990). English argues that, because he was sentenced pursuant to an unconstitutional sentencing scheme, the case needs to be remanded for resentencing.

The People respond that the objection to the sentences imposed is waived because it could have been raised on direct appeal but was not. The judgment of the reviewing court on a previous appeal is *res*

*judicata* as to all issues actually decided, and any claim that could have been presented to the reviewing court in the direct appeal is, if not presented, thereafter barred under the doctrine of waiver. *People v. Silagy*, 116 Ill. 2d 357, 365 (1987). We find waiver to be inapplicable in this case. Defendant could not have waived this issue as *Cervantes* was not decided until after the conclusion of his direct appeal. Also, a party may challenge the constitutionality of a statute at any time. *People v. Wagener*, 196 Ill. 2d 269, 279 (2001), citing *People v. Wright*, 194 Ill. 2d 1 (2000). The People alternatively argue that *Cervantes* does not require a remand for resentencing because English was not sentenced to the minimum applicable term under the statute. The trial court's decision to sentence English to five years above the minimum was based on a review of the presentence investigation report, which revealed that English had a long history of prior convictions, including being found guilty of murder as a juvenile. The trial court considered English's age and his potential for rehabilitation but considered him a threat to society. Therefore, according to the People, even though the amendment changed the minimum term for the crime for which he was convicted, his sentence would not be impacted because the trial court never considered a minimum sentence.

The People urge us to follow the holding in *People v. Cundiff*, 322 Ill. App. 3d 426, 439 (2001). There, the Fifth District of the Appellate Court similarly reviewed a sentence imposed upon a conviction for attempted murder of a police officer. As here, the defendant was sentenced prior to *Cervantes*, holding Public Act 88—680 to be unconstitutional, as it was passed in violation of the single subject rule. The defendant contended that his case should be remanded for a new sentencing hearing. The Fifth District court disagreed, citing *People v. Reedy*, 186 Ill. 2d 1, 16-17 (1999). In *Reedy*, the truth-in-sentencing law was found to be unconstitutional because it, too, was passed in violation of the single subject rule. The People argued that all sentences imposed under the invalid amendments were void and that remands for resentencing would be required.

The supreme court rejected this argument, stating as follows:

> "Although the good-conduct credit scheme which may have been considered by the sentencing courts was invalid, the sentences imposed against defendants were nevertheless, proper. Furthermore, it would be sheer speculation on our part to surmise the extent to which each sentencing court has ultimately factored in the truth-in-sentencing law's good-conduct credit scheme in imposing each sentence against every defendant before it." *People v. Reedy*, 186 Ill. 2d at 16-17.

The court in *Cundiff* found this reasoning to be applicable in that

case. As the defendant's sentence of 30 years was well within the range of section 8—4(c)(1) before the void amendment, he was not entitled to a new sentencing hearing.

In *People v. Ruiz*, 312 Ill. App. 3d 49 (2000), the First District of the Appellate Court similarly addressed the impact of *Cervantes* on a defendant who was sentenced on a conviction of attempted murder of a police officer to a term of 55 years. As did the court in *Cundiff*, this court pointed out, " 'The effect of enacting an unconstitutional amendment to a statute is to leave the law in force as it was before the adoption of the amendment.' " *Ruiz*, 312 Ill. App. 3d at 58, quoting *People v. Gersch*, 135 Ill. 2d 384, 390 (1990). The court continued: "The 'record must establish the sentence is based upon a proper understanding of applicable law.' *People v. Hausman*, 287 Ill. App. 3d 1069, 1072, 679 N.E.2d 867, 869 (1997) (reversing for resentencing where the judge sentenced defendant to the 'minimum sentence of three (3) years' but the actual minimum sentence for the defendant's offense was two years"). *Ruiz*, 312 Ill. App. 3d at 58.

As the trial court "incorrectly" believed that the proper sentencing range was 20 to 60 years when it sentenced the defendant, the *Ruiz* court remanded the case for resentencing.

We choose to follow the holding in *Ruiz*. In *Reedy*, our supreme court was faced with the daunting challenge of whether to remand many hundreds, if not thousands, of cases for resentencing. We are faced with a very small number of cases to reconsider. Also, the truth-in-sentencing law addressed in *Reedy* did not directly impact the number of years to which a defendant could be sentenced. It dealt with how much, if any, "good-time" credit a defendant could accrue. In this case, the void amendment directly increased both the minimum and the maximum number of years to which a defendant could be sentenced. Consequently, we find that defendant's sentences for attempted murder of a police officer are void. We vacate those sentences and remand the cause for resentencing.

For the foregoing reasons, we affirm the trial court's summary dismissal of defendant's postconviction petition, we vacate defendant's sentences for attempted murder of a police officer and remand this case for resentencing on those counts.

Affirmed; sentence vacated in part and cause remanded.

CAMPBELL, P.J., concurs.

JUSTICE REID, specially concurring in part and dissenting in part:

Although I concur in the majority's conclusion that we must vacate defendant's sentences and remand this case, I cannot concur in the affirmance of the trial court's summary dismissal of defendant's post-conviction petition; therefore, I dissent. Contrary to the majority opinion, I believe a review of the record in this case demonstrates that counsel's representation of English at trial did indeed fall below the standard articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). As we have seen, the standard of review of a postconviction petition that is dismissed at the early stage before an evidentiary hearing is very low. Namely, English's burden was to demonstrate the gist of a constitutional claim. Ineffective assistance of counsel is such a constitutional claim. In failing to call Dr. Hoffa as a witness, I believe the assistance of counsel dipped below *Strickland*.

"Although a post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right, [the Illinois Supreme] [C]ourt has repeatedly stressed that a hearing is required whenever the petitioner makes a substantial showing of a violation of constitutional rights." *People v. Coleman*, 183 Ill. 2d 366, 381 (1998); see, *e.g.*, *People v. Hobley*, 182 Ill. 2d 404, 428 (1998); *People v. Gaines*, 105 Ill. 2d 79, 91-92 (1984). "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " *People v. Edwards*, 197 Ill. 2d 239 (2001), quoting *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996), citing *People v. Porter*, 122 Ill. 2d 64, 74 (1988). The "gist" standard is "a low threshold." *Edwards*, 197 Ill. 2d at 244, quoting *Gaultney*, 174 Ill. 2d at 418. "To set forth the 'gist' of a constitutional claim, the post-conviction petition 'need only present a limited amount of detail' (*Gaultney*, 174 Ill. 2d at 418) and hence need not set forth the claim in its entirety. Further, the petition need not include 'legal arguments or [citations] to legal authority.' " *Edwards*, 197 Ill. 2d at 244, quoting *Gaultney*, 174 Ill. 2d at 418. A "gist" of a claim is something less than a completely pled or fully stated claim. *Edwards*, 197 Ill. 2d at 245.

As the majority points out, in the affidavit attached to his *pro se* postconviction petition, English sought the opinion of Dr. Hoffa concerning the surgery recommended by doctors at Cook County Hospital. 334 Ill. App. 3d at 164. Dr. Hoffa expressed an opinion that English's gunshot-related injuries were consistent with his theory that he was shot while lying down. 334 Ill. App. 3d at 164. Specifically, Dr. Hoffa indicated that English had no entrance wounds in his chest.

From that, Dr. Hoffa deduced that all of English's injuries traveled at an angled trajectory from the lower portion of his body toward the upper portion. 334 Ill. App. 3d at 164. Dr. Hoffa indicated a willingness to testify if he was properly subpoenaed. 334 Ill. App. 3d at 165. English claims he notified his attorney about both the conversation with Dr. Hoffa and his willingness to testify. English's attorney apparently believed the State could not meet its burden of proving English guilty of attempted murder, so that Dr. Hoffa's testimony was unnecessary. 334 Ill. App. 3d at 165. He was mistaken.

English, in his petition, claimed that the testimony of Dr. Hoffa could have provided support for English's defense that he neither pointed a gun at the police officers nor attempted to kill them. In his petition, English argues that the combination of his own testimony along with the testimony of Dr. Hoffa would have contradicted and impeached the testimony of the police officers who claimed that he pointed his gun at them while *standing* at the back door, facing the officers.

Detective Wojcik testified that English was standing, pointing his gun in a threatening manner when Wojcik fired the first volley of shots. Wojcik testified that he fired because he feared for the life and safety of himself, his partner and Orlando Perez, the manager of Armitage Liquors. Wojcik repeated several times that English was in a standing position, facing him, brandishing the gun when it became necessary to shoot him. In describing how his bullets hit English's body, Wojcik repeatedly testified that most of the bullets entered English's chest. Wojcik also testified that, once English was on the ground but before Perez could open the security gate, English reached for the gun and again pointed it at him in a threatening manner. At that point, Wojcik claimed English's conduct forced him to fire the second volley of bullets.

On cross-examination, the issue of the position and condition of English's body came up in context of a series of questions regarding bullet trajectory. The following exchange took place:

"[ENGLISH'S COUNSEL:] Well you know what, Detective, then, you tell us, according to the way you shot Mr. English, where should those bullets be entering and how should they be exiting?

[THE STATE:] Judge, I object.

THE COURT: Sustained as well.

[THE STATE:] He's not a doctor.

[ENGLISH'S COUNSEL:] Mr. English, get up. Judge may he go into the courtroom.

THE COURT: Yes, he may. Let the record reflect the defendant English is standing in the well of the courtroom.

[ENGLISH'S COUNSEL:] Left [sic] up your shirt, Mr. English, unbutton your shirt. Stand back so the prosecutors can see you too. Stand right there.

THE COURT: The State may approach the witness as well as Mr. Murphy.

[THE STATE:] Thank you, Judge.

\* \* \*

[ENGLISH'S COUNSEL:] Detective, do you know how many of these entry wounds were caused by you discharging your weapon into Mr. English?

[THE STATE:] Again Judge, Objection, asked and answered.

THE COURT: I'll let him answer that.

[ENGLISH'S COUNSEL:] Do you know?

[DETECTIVE WOJCIK:] Do I know?

[ENGLISH'S COUNSEL:] How many of these entry wounds were caused by you discharging your weapon into—turn sideways—into Mr. English's body?

[THE STATE:] I'm going to object, those have not all been identified as bullet entrances and or bullet wounds, the defendant also has a number of scars because of medical treatment that he received that day, so I object to counsel's question and his pointing to the defendant at this time.

THE COURT: Counsel, unless you're prepared to establish that in fact those are entry wounds, I would sustain the objection.

[ENGLISH'S COUNSEL:] Let me make a record then."

At this point in the proceedings, it becomes clear just how important a witness Dr. Hoffa was. Had Dr. Hoffa testified as English's postconviction petition asserts he would have, he could have contested the story given by the police officers as to the first volley. Further, Dr. Hoffa's testimony would have been consistent with English's theory of defense, especially if none of the holes in English's chest turned out to be entrance wounds. The conviction for attempted murder turns on whether English had the requisite criminal intent at the time of the shooting which, in turn, turns on how the shooting actually took place. The petitioner is entitled to an evidentiary hearing only if he has made a substantial showing, based on the record and supporting affidavits, that his constitutional rights were violated. *People v. Turner*, 187 Ill. 2d 406 (1999). To fail to secure Dr. Hoffa as a witness amounts to ineffective assistance under these facts and circumstances. For the trial court to have dismissed English's postconviction petition without an evidentiary hearing was error. The Post-Conviction Hearing Act authorizes the appointment of counsel at the second stage who would have the opportunity to amend the petition itself in contemplation of

an evidentiary hearing. 725 ILCS 5/122—1 *et seq.* (West 2000). Any questions remaining as to the sufficiency of the evidence and the existence of reasonable doubt would then be resolved at an evidentiary hearing.

The majority correctly identifies the general rules when it comes to the failure to call witnesses. 334 Ill. App. 3d at 164. In sum, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must (1) show that his counsel's performance fell below an objective standard of reasonableness and (2) demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." *People v. Reid*, 179 Ill. 2d 297, 310 (1997), citing *Strickland*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). "Decisions concerning which witnesses to call at trial and what evidence to present on defendant's behalf ultimately rest with trial counsel." *Reid*, 179 Ill. 2d at 310, citing *People v. Madej*, 177 Ill. 2d 116, 148 (1997). "As matters of trial strategy, such decisions are generally immune from claims of ineffective assistance of counsel." *Reid*, 179 Ill. 2d at 310, citing *Madej*, 177 Ill. 2d at 148. *"The only exception to this rule is when counsel's chosen trial strategy is so unsound that counsel entirely fails to conduct any meaningful adversarial testing."* (Emphasis added.) *Reid*, 179 Ill. 2d at 310, citing *Madej*, 177 Ill. 2d at 149. I recognize that this is indeed a high standard and one that should not be treated lightly. But I also recognize that there are those cases where trial counsel, through inadvertence, carelessness, or just plain incompetence, can make a strategic choice that is, quite frankly, too unprofessional to ignore.

Assuming for the moment that English's version of the events was entirely correct and he was shot while lying on the ground, that would contradict the State's interpretation of the threat posed by English to the police officers. Defendants make such claims all the time. They are evaluated by the trier of fact, whether a judge or a jury, and either accepted or rejected as the case may warrant. Here, however, the defendant presented his counsel with a witness whose expert testimony would *seriously* undermine both the credibility of the State's witnesses and its case in chief. When confronted by this potential expert witness, counsel indicated that English's case was so strong in other areas that the medical expert witness was not necessary. English, from his jail cell, argues otherwise and I find I must agree. Accordingly, I dissent.