2026 IL App (1st) 241652-U

No. 1-24-1652

Order filed March 27, 2026

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of Cook County, |
| Plaintiff-Appellee, | ) | Criminal Division. |
| | ) | |
| v. | ) | No. 19 CR 0001901 |
| | ) | |
| BRYCE JONES-LANUM, | ) | Honorable |
| | ) | Diana L. Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Mikva and Justice Wilson concurred in the judgment.
Justice Mikva also specially concurred.

**ORDER**

*Held*: Defendant's conviction is affirmed where it was supported by sufficient evidence and trial counsel's performance, even if ineffective, did not prejudice defendant.

¶ 1 Following a bench trial, defendant Bryce Jones-Lanum was convicted of attempted first degree murder of a peace officer (720 ILCS 5/8-4(a), 9-1(b)(1) (West 2016)), aggravated battery for discharging a firearm and injuring another (*id.* § 12-3.05(e)(1)), and aggravated battery for discharging a firearm and injuring a peace officer (*id.* § 12-3.05(e)(2)). After merging the counts,

the circuit court sentenced defendant to 41 years' imprisonment for attempted murder of a peace officer.

¶ 2    Defendant raises the following issues on appeal: (1) whether there was sufficient evidence to support defendant's conviction for attempted murder of a police officer because the State failed to prove beyond a reasonable doubt that defendant knew that he shot at a police officer; (2) whether the circuit court committed manifest error in concluding that trial counsel was not constitutionally ineffective because an effective trial counsel would have brought a motion to suppress defendant's pretrial statements to police; and (3) whether the circuit court abused its discretion in denying defendant's motion for a new trial because it applied an erroneous legal standard. For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On November 20, 2018, defendant walked out of a gas station on the south side of Chicago. Chicago police officer Luis Escovedo drove an unmarked police vehicle nearby with Officer Fernando Soto riding in the passenger seat. Officer Escovedo made a U-turn and stopped the car along the curb, within a few yards of defendant. Officer Soto exited the vehicle dressed in civilian clothes, wearing a bulletproof vest and a duty belt with a handgun attached. Officer Soto approached and pointed at defendant's waist. (The parties dispute what Officer Soto said as he approached.) Defendant ran, and Officer Soto pursued. Officer Escovedo activated the vehicle's blue emergency lights, but not the siren. He drove ahead and made a U-turn within several feet of defendant, blocking defendant's flight down the street.

¶ 5    Defendant turned and ran to his left but was blocked by an iron fence. Defendant turned again, ran back towards Officer Soto, and fired a handgun at Officer Soto. Officer Soto

immediately returned fire and struck defendant in his neck. A bullet hit Officer Soto in his back during the exchange. Officer Escovedo exited the vehicle and handcuffed defendant, who was taken to the hospital.

¶ 6     Defendant was arrested and charged in a multi-count indictment. At trial, Officer Soto testified that when he exited the vehicle he announced "police," and asked "how old are you?" He testified that defendant asked "why?" and took a few steps away. Officer Soto noticed what he believed to be a gun in defendant's jacket, pointed at defendant's waist, and asked "what is that?" Defendant fled, and the chase ensued.

¶ 7     The circuit court admitted Officer Soto's body camera footage into evidence. However, the audio was not activated until defendant fled. Thus, while the body camera footage captured Officer Soto's movement and gestures as he approached defendant, it did not record his statements.

¶ 8     Three eyewitnesses testified that they observed the chase and knew Officer Soto was a police officer because of his bulletproof vest, the handgun on his duty belt, or the activated blue emergency lights. Further, Officer Soto and two of the eyewitnesses testified that defendant shot first.

¶ 9     The State also called Detective Brian Tedeschi. He testified that he read defendant his *Miranda* rights (*Miranda v. Arizona*, 384 U.S. 436 (1966)) and interviewed defendant at the hospital. Detective Tedeschi testified that defendant gave a fake name and admitted that he knew Officer Soto was a police officer when Officer Soto approached him. However, Detective Tedeschi had not activated his camera during this portion of the interview. After realizing the mistake, he turned the camera on and re-questioned defendant. The circuit court admitted the video into evidence. In the videotaped version, defendant did *not* admit to knowing that Officer Soto was a

police officer. Rather, he referred to Officer Soto as "some dude." Further, the video showed defendant was immobilized in a neck brace and moaning in pain as Detective Tedeschi questioned him.

¶ 10    After the State rested, defendant called character witnesses who testified to defendant's peaceful character. Defendant also testified and explained that he carried a gun for protection because he had been recently attacked and people in the neighborhood had been shot. He testified that when Officer Soto exited the vehicle and aggressively approached him, he "went into shock mode" and ran to "not get shot or attacked." He testified that he did not see the flashing blue lights, hear any sirens, or look back at his pursuer. Defendant testified that he did not draw his gun until Officer Soto had already drawn his gun and pointed it at him, and defendant testified Officer Soto shot first.

¶ 11    The circuit court found defendant guilty, and defendant moved for a new trial. He alleged, among other things, ineffective assistance of counsel because his trial counsel failed to move to suppress his statements to police while in the hospital.

¶ 12    The circuit court held an evidentiary hearing. Defendant's trial counsel testified that they would have likely prevailed on a motion to suppress. However, they believed a motion to suppress would delay the trial and that during the delay, the case could be reassigned to a new judge. They had secured a favorable bail ruling from the trial judge and did not want to risk being reassigned to a new judge. Further, they did not believe defendant's statements were significantly incriminating, and they believed the video of the interrogation was so egregious that the trial judge would not give it much weight. Counsel testified that they explained the strategy to defendant and obtained his consent.

¶ 13    The circuit court denied the motion, finding counsels' decision was sound trial strategy and defendant was not prejudiced by the admission of his statements. This timely appeal followed. Ill. S. Ct. R. 606 (eff. Apr. 15, 2024).

¶ 14                                    II. ANALYSIS

¶ 15                            A. Sufficiency of the Evidence

¶ 16                    1. *Knowledge that the Victim Was a Peace Officer*

¶ 17    Defendant argues the State failed to prove defendant knew or should have known Officer Soto was a police officer where the police approached in an unmarked vehicle, wore plain clothes, and the body camera footage does not capture the officers identifying themselves as police. The State argues there was sufficient evidence of knowledge where Officer Soto testified that he announced his presence as a police officer, he wore a bulletproof vest and a duty belt, and defendant came within a few feet of the vehicle's activated blue emergency lights.

¶ 18    When reviewing a challenge to the sufficiency of the evidence, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Jones*, 2023 IL 127810, ¶ 28. "[A] reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence." *People v. Wright*, 2017 IL 119561, ¶ 70. We will overturn a conviction only if "the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Jones*, 2023 IL 127810, ¶ 28.

¶ 19    Under the Criminal Code of 2012, first degree murder is, in pertinent part, the unlawful killing of another while acting with intent to kill or knowledge of a strong probability of death:

"A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death: (1) he either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or (2) he knows that such acts create a strong probability of death or great bodily harm to that individual or another ***." 720 ILCS 5/9-1(a) (West 2016).

"A person commits the offense of attempt when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a) (West 2016).

¶ 20    Attempted murder is generally a Class X felony, which provides for a baseline sentencing range of 6 to 30 years' imprisonment. *Id.* § 5/8-4(c)(1); 730 ILCS 5/5-4.5-25 (West 2016). However, if a "defendant [is] charged and convicted of attempted first degree murder of a peace officer in the course of performing his official duties, defendant [is] subject to a sentence between 20 and 80 years' imprisonment ***." *People v. Taylor*, 2023 IL 128316, ¶ 10; see 720 ILCS 5/8-4(c)(1)(A) (applying a sentencing enhancement for a completed first degree murder of a peace officer under section 9-1(b)(1) to attempted murder of a peace officer).

¶ 21    Taken together, "[t]o sustain a conviction for attempted murder of a peace officer, the State must establish beyond a reasonable doubt that the defendant (1) performed an act constituting a substantial step toward the commission of murder, (2) possessed the criminal intent to kill the victim, and (3) *knew or reasonably should have known* that the victim was a peace officer in the course of performing his official duties." (Emphasis added.) *People v. Kidd*, 2014 IL App (1st) 112854, ¶ 28.

¶ 22    Here, Officer Soto testified that he announced himself as a police officer when he exited the vehicle but before his body camera audio was activated. Further, Officer Soto wore a duty belt and a bulletproof vest. See *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 83 (citing plain-clothed police officers' bulletproof vests and duty belts as evidence defendant knew they were police). While defendant did not see "police" written in large print on the back side of Officer Soto's vest, the front side of the police vest was visible and displayed his name and star. Illinois appellate decisions have recognized that the front side of a police vest gives notice that the person is a police officer. See, *e.g.*, *In re A.D.*, 2021 IL App (1st) 201059-U, ¶ 42 (explaining even though defendant did not see the back side of the bulletproof vest, "it is common sense if not common knowledge, that only police officers wear bulletproof police vests with a visible police badge number attached"). Further, defendant stood within a few feet of the front side of Officer Soto's vest, and his head was turned toward Officer Soto. See *id.* (explaining defendant is charged with knowledge where the defendant viewed the front side of a police vest from approximately 100 feet away). Indeed, eyewitness Evie Foster observed the chase from a nearby bus stop, and eyewitnesses Robert Franklin and Daniel Lipinski observed the chase from a car approximately 30 to 40 feet away. Each testified that they knew Officer Soto was a police officer, at least in part, because of his vest. Foster added that she knew Officer Soto was a police officer because of the gun on his duty belt.

¶ 23    Moreover, even if defendant did not immediately recognize Officer Soto as a police officer, Officer Escovedo flashed the vehicle's blue emergency lights within a few feet of defendant after the chase ensued. Lipinski testified he knew Officer Soto was a police officer, in part, because of the activated blue emergency lights. Thus, even if defendant did not immediately identify Officer

Soto as a police officer, a rational trier of fact could find defendant knew or should have known Officer Soto was a police officer when defendant came within a few feet of the activated blue emergency lights. See *People v. Ruiz*, 312 Ill. App. 3d 49, 56-57 (2000) (explaining the "should have known" standard for attempted murder of a peace officer "implicates the standard of care which a reasonable person would exercise and therefore pertains to the lesser mental states of recklessness and negligence" (internal quotation marks omitted)).

¶ 24    Defendant argues various inferences to suggest that he did not know Officer Soto was a police officer, but none are sufficient to undermine the conviction. Defendant notes Officer Soto violated Chicago Police Department regulations because he had facial hair and his star was positioned at the waist of his bulletproof vest rather than the breast. But a rational trier of fact could find the star was still visible to defendant and that facial hair is irrelevant to identification of a plain-clothed police officer.

¶ 25    Defendant also notes Officer Escovedo testified that he never heard Officer Soto announce his presence as a police officer. However, Officer Escovedo explained he could not hear precisely what his partner said because he was inside the vehicle and his attention was focused elsewhere. A rational trier of fact could believe Officer Soto's testimony that he announced his presence despite Officer Escovedo not hearing it. See *People v. Hill*, 2023 IL App (1st) 150396, ¶ 21 ("It is well settled that the determinations of witnesses' credibility and the weight given their testimony are exclusively within the province of the jury, and it is for the jury to resolve any conflicts in the evidence.").

¶ 26    Next, defendant argues that Foster's testimony—that she *immediately* knew Officer Soto was a police officer—is contradicted by a statement she gave to police after the shooting. In the

statement, Foster said "at first" she did not recognize Officer Soto as a police officer but realized it once she saw his bulletproof vest and duty belt. Here, even if it was delayed, at some point during the chase she recognized Officer Soto as a police officer because of his bulletproof vest and duty belt. It was the trier of fact's task to evaluate the impeachment and determine what weight, if any, to attach to the testimony. See *People v. Smith*, 253 Ill. App. 3d 443, 455 (1993) ("[I]mpeachment goes to credibility and is for the jury, not this court, to weigh.").

¶ 27    Finally, defendant's reliance on a dissent in *People v. Lopez*, 166 Ill. 2d 441, 460 (1995) (McMorrow, J., dissenting) is misplaced. In that case, the dissent argued that the evidence supported a jury instruction on "attempted second degree murder" because there was evidence that the defendant did not know that he was shooting at a police officer. *Id.* Here, defendant was tried to the bench, and he squarely presented his defense that he lacked the requisite knowledge.

¶ 28                                   2. *Self-Defense*

¶ 29    Defendant argues the State failed to disprove self-defense because Officer Soto did not identify himself as a police officer, he aggressively pursued defendant with his gun drawn, and the men fired at each other almost simultaneously. The State argues it negated the self-defense justification by proving defendant knew Officer Soto was a police officer and that defendant was the initial aggressor because defendant drew his gun and shot first.

¶ 30    In a self-defense case, a reviewing court asks whether "any rational trier of fact could have found, beyond a reasonable doubt, that defendant did not act in self-defense." *People v. Lee*, 213 Ill. 2d 218, 225 (2004). As noted, "[a]ll reasonable inferences from the evidence must be drawn in favor of the State," and we will overturn a conviction only if "the evidence is so unreasonable,

improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Jones*, 2023 IL 127810, ¶ 28.

¶ 31    Under the Criminal Code of 2012, the self-defense justification for homicide provides that a person "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2016). Once a defendant raises the justification, "[t]he State must also prove that the murder was not carried out in self-defense, and that the defendant's use of force was not legally justified." *People v. Jeffries*, 164 Ill. 2d 104, 127 (1995). To that end, the State must negate one of the six elements of self-defense beyond a reasonable doubt:

> "(1) force is threatened against a person; (2) the person threatened is not the aggressor; (3) the danger of harm was imminent; (4) the threatened force was unlawful; (5) he actually and subjectively believed a danger existed which required the use of the force applied; and (6) his beliefs were objectively reasonable." *Id*. at 127-28.

If the State negates any one of these elements, the self-defense claim fails. *Id.* at 128.

¶ 32    Here, Officer Soto testified he did not unholster his gun until defendant first pulled out his gun, and Officer Soto testified that defendant shot first. Two eyewitnesses, Foster and Lipinski, testified that defendant shot first. Against this backdrop, a rational trier of fact could find that defendant was the initial aggressor. See *People v. Cruz*, 2021 IL App (1st) 190132, ¶ 55 ("[B]randishing a weapon is one way for a defendant to become the initial aggressor in a conflict."); *People v. De Oca*, 238 Ill. App. 3d 362, 367 (1992) ("[W]hether the defendant was the initial aggressor, *i.e.*, the one who provoked the fatal confrontation, is a question of fact to be decided by the trier of fact."). Accordingly, a rational trier of fact could find, beyond a reasonable doubt, that defendant's use of force was not justified.

¶ 33    Defendant argues various inferences to suggest the State failed to disprove self-defense, but again these contentions do not undermine the conviction. First, defendant cites his own testimony that Officer Soto drew his gun first. However, Officer Soto testified that defendant drew his gun first, and Officer Soto and multiple eyewitnesses testified defendant shot first. It was the trier of fact's responsibility to evaluate the testimony and determine who drew first and who shot first. See *People v. Gray*, 2017 IL 120958, ¶¶ 35-36 ("[I]t is the responsibility of the trier of fact to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. ***. A conviction will not be reversed simply because the evidence is contradictory or because the defendant claims that a witness was not credible."); *People v. Hendricks*, 137 Ill. 2d 31, 65 (1990) ("Assuming, as we must, that the jury believed the State's witnesses over those of the defendant, we conclude that the evidence was sufficient to support the convictions.").

¶ 34    Defendant cites several instances where the State's witnesses were impeached. Defendant maintains that Officer Soto testified on direct examination that he did not draw his gun until defendant had already shot (not just drawn) his gun. Defendant impeached Officer Soto with body camera footage that shows Officer Soto with his gun drawn and pointed at defendant in the seconds before the men fired at each other. Next, defendant notes that Franklin and Lipinski's memories of the circumstances were impeached. But it is up to the finder of fact to assess the credibility of witnesses and to determine what weight to attach to their testimony. *Smith*, 253 Ill. App. 3d at 455 ("[I]mpeachment goes to credibility and is for the jury, not this court, to weigh.").

¶ 35                    B. Ineffective Assistance of Counsel

¶ 36    Defendant argues that he received ineffective assistance of counsel because his trial counsel did not file a motion to suppress statements that he made to the police at the hospital. He

contends that those statements were involuntary. Detective Tedeschi questioned defendant as he was lying in a hospital bed and in significant pain—only hours after the shooting. The State argues (1) counsels' decision was the product of sound trial strategy and (2) defendant was not prejudiced because the evidence of guilt from the testimony and body camera footage was overwhelming.

¶ 37    Defendant argues that his ineffective assistance claim should be reviewed under the *de novo* standard. However, "[w]here, as here, the [circuit] court reaches a determination on the merits of a defendant's ineffective assistance of counsel claim, we will reverse that determination only if it was manifestly erroneous." *People v. Bell*, 2021 IL App (1st) 190366, ¶ 63. "Manifest error is error that is clearly plain, evident, and indisputable." (Internal quotation marks omitted.) *Id.*

¶ 38    Defendants in a criminal trial have a constitutional right to effective assistance of counsel under the United States and Illinois Constitutions. U.S. Const., amends. VI, VIX; Ill. Const. 1970, art. I, § 8; *Strickland v. Washington*, 466 U.S. 668 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). We apply a two-prong test. *People v. Cherry*, 2016 IL 118728, ¶ 24. Under the performance prong, a defendant must show "counsel's performance was objectively unreasonable under prevailing professional norms." *Id.* "A defendant must overcome the strong presumption that counsel's challenged action or inaction was the product of sound trial strategy." *People v. Webb*, 2023 IL 128957, ¶ 22. Under the prejudice prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Cherry*, 2016 IL 118728, ¶ 24. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." (Internal quotation marks omitted.) *People v. Johnson*, 2021 IL 126291, ¶ 55. The prong "necessitates a showing of actual prejudice, not simply speculation that defendant may

have been prejudiced." (Internal quotation marks omitted.) *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 330 (2011).

¶ 39    Here, the circuit court found defendant was not prejudiced by the statements he made to police at the hospital because defendant's guilt primarily turned on the video evidence:

> "THE COURT: [E]ven if trial counsel had filed a motion to suppress statements and it was granted, the defendant has failed to show that it would have changed the result at trial. This case rested primarily on video evidence. As the Court made clear in its ruling after the trial, even if Mr. Jones-Lanum did not initially realize that Officer Soto was a police officer, the events of the chase, including the police car passing close to the defendant with its lights flashing should have indicated to him that he was being chased by the police not some stranger."

Thus, even if defendant's statements at the hospital had been suppressed, there is ample evidence in the record from which the trier of fact could conclude that defendant knew or should have known Officer Soto was a police officer.

¶ 40    Defendant raises additional arguments, none of which are persuasive. He notes the circuit court cited defendant's statements at the hospital as evidence of guilt in her oral ruling; accordingly, defendant argues there was a reasonable probability that defendant would have been acquitted if defense counsel moved to suppress. However, the circuit court cited the statements briefly and for what it described as additional evidence. It primarily relied on the video evidence.

¶ 41    Next, he argues defense counsels' tactic was objectively unreasonable because defendant could have filed a motion to suppress at the bench trial. Defendant maintains this would have kept the trial with the assigned judge while also suppressing the hospital statements. However, because defendant failed to satisfy the prejudice prong, we need not address the performance prong. See

*People v. Hale*, 2013 IL 113140, ¶ 17 ("[W]e may dispose of an ineffective assistance of counsel claim by proceeding directly to the prejudice prong without addressing counsel's performance.").

¶ 42                                    C. New Trial

¶ 43    Defendant argues that the circuit court applied an erroneous legal standard in denying his motion for a new trial, because it focused on "subjective assessments" in concluding that defendant was not entitled to a new trial based on his claim of ineffective assistance of counsel. This argument largely overlaps with the ineffective assistance claim analyzed above, but defendant contends that the circuit court "erroneously" concluded that the result would have been the same even if counsel had brought and prevailed on the motion to suppress. We typically review the denial of a motion for a new trial for an abuse of discretion, because the trial judge is in the best position to evaluate the effect a claimed error had on the fairness of the trial as a whole. *People v. Boyd*, 2021 IL App (1st) 182584, ¶ 54; *People v. Harper*, 347 Ill. App. 3d 499, 503 (2004). And as we have seen above, a circuit court's ruling on an ineffective assistance claim is likewise reviewed under a deferential standard, in part, because of the trial judge's superior position in weighing prejudice in light of the entire trial record.

¶ 44    For the reasons already discussed, defendant's ineffective assistance claim fails. The circuit court correctly assessed trial counsel's performance "on the basis of the entire record, and not upon isolated instances of alleged incompetence called into question by the defendant." *People v. Flores*, 128 Ill. 2d 66, 107 (1989). Further, it strains credulity to characterize as "speculation" the circuit court's conclusion that defendant should have realized he was shooting at a police officer. That conclusion was rooted in the circuit court's consideration of the totality of the evidence presented at trial: "[E]ven if Mr. Jones-Lanum did not initially realize that Officer Soto was a

police officer, the events of the chase, including the police car passing close to the defendant with its lights flashing should have indicated to him that he was being chased by the police and not some stranger." This conclusion is supported by evidence in the record and thus is entirely proper.

¶ 45                                    III. CONCLUSION

¶ 46     For all these reasons, the judgment is affirmed.

¶ 47     Affirmed.

¶ 48     JUSTICE MIKVA, specially concurring:

¶ 49     The trial court in this case expressed its view that the result of the two separate legislative enhancements at play here was "unfortunate." Because Mr. Jones-Lanum was found guilty of the attempted murder of a police officer, and because that crime was committed with a firearm, the court was required to sentence him to a minimum of 20 years for the base offense and to an additional 20-year enhancement. As the court also recognized, this sentence will be served at eighty-five percent, meaning Mr. Jones-Lanum will be in his late 50s when released. That is, as the trial court put it, a "really long time" in prison given the "very strong" mitigation in this case.

¶ 50     The mitigating circumstances included that Mr. Jones-Lanum had no criminal record; had been out on electronic monitoring for more than two years pending trial, without incident; was a high school graduate attending college; had strong community and family support; and was an involved father. In short, the unfortunate split second when Mr. Jones-Lanum fired a gun in the direction of Officer Soto was totally out of keeping with who he was or the life he had led up to that point.

¶ 51     While the trial court did not mention this, I also find it significant that, because Mr. Jones-Lanum was twenty-two at the time of this crime, rather than twenty, he was not eligible for parole

under the parole review statute for youthful offenders. 730 ILCS 5/5-4.5-115 (West 2024). Thus, that route to obtaining an earlier release is foreclosed to him.

¶ 52 I am aware that the trial court actually imposed a sentence that was one year more than the 40-year minimum. However, the court appears to have added that year based on a desire to somehow account for the five disciplinary reports that Mr. Jones-Lanum received while incarcerated during a lengthy delay between his trial and sentencing. I am confident that had the trial judge not been constrained by what she referred to as a "double enhancement" based on the statutory scheme, she would have imposed a sentence that gave Mr. Jones-Lanum an opportunity to emerge from prison in less time.

¶ 53 I think this case represents one of many examples in which the legislative imposition of minimum sentences and mandatory enhancements does not serve us well. On the appellate court, we are repeatedly admonished (or we admonish ourselves) to defer to the trial court's sentencing decisions, based on the trial judge's greater understanding of the defendant and of the crime. But when those decisions are so constrained by legislative requirements, the opportunity that the trial court should have to consider the facts of the case in light of the applicable sentencing factors is seriously compromised.

¶ 54 I join the majority decision in this case. I agree with my colleagues that there is no basis for reversing this conviction. However, I do so reluctantly because I do not find this outcome to be fair and just.